No. 21-2773

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

IRINA MARON, ET AL

Plaintiffs-Appellants,

v.

THE LAW OFFICE OF RAY GARICA, ET AL

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division
No. 20-cv-07282
The Honorable Andrea Wood, Judge Presiding
————

**REPLY BRIEF OF PLAINTIFFS-APPELLANTS**
————

Attorney For Plaintiffs-Appellants
Ilia Usharovich, Attorney
224 South Milwaukee Avenue Suite
G Wheeling, Illinois 60090
Telephone: 847-264-0435
Facsimile: 224-223-8079
Email:Ilia@usharolaw.com

TABLE OF CONTENTS

A.   THE STATUTE OF LIMITATIONS ...................................................... 6

B.   1964(C)'S CRIMINAL CONVICTION EXCEPTION ......................................... 7

C.   EQUITABLE TOLLING AND EQUITABLE ESTOPPEL .................................. 9

D.   THE SEPARATE ACCRUAL RULE. ................................................. 10

E.   DIMISSAL WITH PREJUDICE ........................................................ 11

F.   NO INDEPENDENT BASIS TO AFFIRM ........................................ 12

   i.    PROFESSIONAL LEGAL SERVICES ................................................. 12
   ii.   18 U.S.C. 1962(A) ................................................................. 17
   iii.  18 U.S.C. 1962(B) ................................................................. 17
   iv.   18 U.S.C. 1962(C) ................................................................. 18
G.   CONCLUSION .................................................................... 27

H.   CERTIFICATE OF COMPLAINCE ................................................. 28

TABLE OF AUTHORTIES

Cases

*A.I. Credit Corp. v. Hartford Computer Group, Inc.,* 847 F. Supp. 588, 604 (N.D. Ill. 1994) .... 20

*Alejo v. Heller*, 328 F.3d 930, 937 (7th Cir. 2003) ...................................................................... 12

*Anitora Travel, Inc. v. Lapian*, 677 F. Supp. 209, 216 (S.D.N.Y. 1988)...................................... 7

*Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 880 F. Supp. 1202 (N.D. Ill. 1995*)* .. 8

*Azrielli v. Cohen Law Offices*, 21 F.3d 512, 521 2d Cir. 1994 .................................................... 15

*Baisch v. Gallina*, 346 F.3d 366, 376–77 (2d Cir. 2003)............................................................. 27

*Barkley v. Carter County State Bank,* 920 F. Supp. 1441, 1443 (E.D. Mo. 1996)........................ 7

*Bd. of Managers of Trump Tower at City Ctr. Condo. by Neiditch v. Palazzolo* ........................... 8

*Bocciolone v. Solowsky*, 08-20200-CIV, 2009 WL 936667, at *4 (S.D. Fla. Apr. 6, 2009) ........ 15

*Cohen v. Wolgin, CIV.* 87-2007, 1995 WL 33095, at *11 (E.D. Pa. Jan. 24, 1995).................... 24

*Corman v. Nationwide Life Ins. Co.*, 396 F. Supp. 3d 530 (E.D. Pa. 2019) CO) ........................... 8

*Crowe v. Smith*, 848 F.Supp. 1258, 1264 (W.D.La.1994) ........................................................... 13

*Crowe v. Smith*, 848 F.Supp. 1258, 1265 (W.D.La.1994) ........................................................... 17

*Ctr. Cadillac, Inc. v. Bank Leumi Tr. Co. of New York*, 808 F. Supp. 213, 226 (S.D.N.Y. 1992),
    aff'd, 99 F.3d 401 (2d Cir. 1995) .......................................................................................... 11

*Dubai Islamic Bank v. Citibank, N.A.*, 256 F. Supp. 2d 158 (S.D.N.Y. 2003)............................... 8

*Dudley Enterprises, Inc. v. Palmer Corp.*, 832 F. Supp. 221, 225 (N.D. Ill. 1993) ...................... 25

*Dynabest Inc. v. Yao, 760 F. Supp. 704, 709–11 (N.D. Ill. 1991)* ................................................ 21

*Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 827–28 (7th Cir.
    2016) ...................................................................................................................................... 22

*Environmental Tectonics v. W.S. Kirkpatrick, Inc.*, 847 F.2d 1052, 106...................................... 24

*Feld Entm't Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals*, 873 F. Supp. 2d 288
    (D.D.C. 2012) ........................................................................................................................ 19

*Ferleger v. First Am. Mortg. Co.*, 662 F. Supp. 584, 588 (N.D. Ill. 1987).................................. 23

*Fleet Credit Corp. v. Sion,* 893 F.2d 441, 447–48 (1ˢᵗ Cir.1990) ................................................ 21

*Fuji Photo Film U.S.A., Inc. v. McNulty*, 640 F. Supp. 2d 300, 312 (S.D.N.Y. 2009)................ 26

*Fujisawa Pharm. Co., Ltd. v. Kapoor*, 814 F. Supp. 720, 733–34 (N.D. Ill. 1993)..................... 20

*Garlock Sealing Techs., LLC v. Simon Greenstone Panatier Bartlett*, 2015 WL 5148732, at *5
    (W.D.N.C. Sept. 2, 2015)....................................................................................................... 16

*Goren v. New Vision* Int'l, Inc., 156 F.3d 721, 732–33 (7th Cir. 1998) holding modified by
   *Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961 (7th Cir. 2000) ............................... 26

*Handeen v. LeMaire*, 112 F.3d 1339, 1349 (8th Cir.1997) ...................................................... 13

*Handeen v. Lemaire*, 112 F.3d 1339, 1350 (8th Cir. 1997).................................................... 14

*Hecht v. Commerce Clearing House*, Inc., 897 F.2d 21, 26 n. 4 (2d Cir.1990) ......................... 25

*Home Ins. Co. v. Greenfield & Chimicles*, 97-7797, 1999 WL 286440, at *5 (E.D. Pa. May 5,
   1999). ............................................................................................................................... 24

*Inteliquent, Inc. v. Free Conferencing Corp.*, 16-CV- 06976, 2020 WL 7027583 (N.D. Ill. Nov.
   30, 2020) ......................................................................................................................... 21

*Inteliquent, Inc. v. Free Conferencing Corp.*, 16-CV-06976, 2020 WL 7027583 (N.D. Ill. Nov.
   30, 2020) ..................................................................................................................... 22, 23

Johnston v. Wilbourn, 760 F.Supp. 578, 588 n. 13 (S.D.Miss.1991 ........................................ 21

*Jones v. Lampe*, 845 F.2d 755, 758 (7th Cir. 1988)............................................................... 23

*Joseph v. Bach & Wasserman, L.L.C.*, 487 Fed. Appx. 173, 178–79 (5th Cir. 2012)................ 11

*Kaczmarek v. Int'l Bus. Machines Corp.*, 30 F. Supp. 2d 626, 628 (S.D.N.Y. 1998)................ 17

*Kruse v. Repp*, 419CV00106SMRSBJ, 2020 WL 1317479, at *23–24 (S.D. Iowa Mar. 20, 2020)
   .......................................................................................................................................... 15

*LaSalle Bank Lake View v. Seguban*, 937 F. Supp. 1309, 1321 (N.D. Ill. 1996)......................... 19

*Liquid Air Corp. v. Rogers*, 834 F.2d 1297, 1306 (7th Cir. 1987)............................................. 9

*Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353, 364 (9th Cir.2005) ........ 13

*Martinez v. Calimlim*, 651 F. Supp. 2d 852, 860 (E.D. Wis. 2009)........................................... 26

*Michalowski v. Rutherford*, 82 F. Supp. 3d 775 (N.D. Ill. 2015) .................................................. 8

*Morgan v. Bank of Waukegan*, 804 F.2d 970, 975–76 (7th Cir.1986).......................................... 23

*Morgan v. Bank of Waukegan*, 804 F.2d 970, 976 (7th Cir. 1986)............................................... 24

*Napoli v. United States*, 32 F.3d 31 (2d Cir.1994) cert. denied, 513 U.S. 1110, 115 S.Ct. 900, 130
   L.Ed.2d 784 (1995) .......................................................................................................... 13

*Nolte v. Pearson*, 994 F.2d 1311, 1316–17 (8th Cir. 1993)......................................................... 15

*Papai v. Cremosnik, 635 F.Supp. 1402 (N.D.Ill.1986)* .......................................................... 23

*Porter v. Combs*, 105 F. Supp. 3d 872, 876–78 (N.D. Ill. 2015)................................................. 10

*R.E. Davis Chem. Corp. v. Nalco Chem. Co.*, 757 F. Supp. 1499 ............................................. 16

*R.E. Davis Chem. Corp. v. Nalco Chem. Co.*, 757 F. Supp. 1499, 1522 (N.D. Ill. 1990) ............. 8

*Resolution Tr. Corp. v. S & K Chevrolet*, 868 F. Supp. 1047, 1061 (C.D. Ill. 1994) .................. 21

*Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 199 (1993)......... 8

*Saxon v. Sw. Airlines Co.*, 993 F.3d 492, 496 (7th Cir. 2021), cert. granted, 142 S. Ct. 638 (2021) ............................................................................................................................................. 7

*Shapo v. O'Shaughnessy*, 246 F. Supp. 2d 935, 966–67 (N.D. Ill. 2002) ..................................... 26

*Sidney Hillman Health Ctr. of Rochester v. Abbott Laboratories, Inc.*, 782 F.3d 922 (7th Cir. 2015) ............................................................................................................................................ 7

*Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 263 (6th Cir. 2014)............................. 6

*Slorp v. Lerner, Sampson & Rothfuss*, 587 Fed. Appx. 249, 264–66 (6th Cir. 2014) ................. 25

*State Farm Mut. Auto. Ins. Co. v. Rosenfield*, 683 F. Supp. 106, 109 (E.D. Pa. 1988) ............... 15

*The Cadle Co. v. Flanagan*, CIV. 301CV531AVC, 2006 WL 860063, at *9 (D. Conn. Mar. 31, 2006) ......................................................................................................................................... 13

*The Cadle Co. v. Flanagan*, No. 301CV531AVC, 2006 WL 860063, at *9–11 ......................... 15

*Thomas v. Ross & Hardies*, 9 F. Supp. 2d 547, 554–55 (D. Md. 1998) ....................................... 13

*Town of Kearny v. Hudson Meadows Urban Renewal Corp.*, 829 F.2d 1263, 1268................... 24

*Tribune Co. v. Abiola*, 66 F.3d 12 (2d Cir.1995)........................................................................ 13

*Tribune Co. v. Purcigliotti*, 869 F.Supp. 1076, 1098 (S.D.N.Y.1994) ......................................... 13

*United States v. Busacca,* 936F.2d 232 (6th Cir.1991)................................................................. 20

*United States v. Jacobson*, 691 F.2d 110, 112–13 (2d Cir. 1982) ........................................ 11, 18

*United States v. Koenig*, 856 F.2d 843, 854 (7th Cir.1988); *United States v. Nesbitt*, 852 F.2d 1502, 1510 (7th Cir.1988)............................................................................................................ 26

*Water Int'l Network, U.S.A., Inc. v. East*, 892 F. Supp. 1477, 1482 (M.D. Fla. 1995)................ 27

*Wiatt v. Winston & Strawn LLP*, 838 F. Supp. 2d 296, 320 (D.N.J. 2012) ................................. 15

*Xanthopoulos v. United States Dep't of Labor*, 991 F.3d 823, 833 (7th Cir. 2021) ..................... 9

Statutes
1 U.S.C. § 1 ..................................................................................................................................... 8

Fla. R. Civ. P. 1.190.......................................................................................................................... 12

Pursuant to the court's order extending the time to file the reply brief, Plaintiffs' present this single reply to all the responses filed by the various Defendants in this matter.

## A. THE STATUTE OF LIMITATIONS

Defendants incorrectly assert that the limitations period expired no later than June 25, 2016. Plaintiffs alleged they were injured on or about 4/12/2018, 07/25/2018, and 01/08/2019 when Defendants knowingly created documents containing false statements and submitted these documents using channels of interstate commerce. (Compl. 433-496, 736-787 Dkt. No. 1). The alleged racketeering activity in connection with the Florida foreclosure proceeding was directed toward recovering money from Plaintiffs as guarantors and alleged property owner. See (Dkt. No. 54) (Appellants Appendix. Pg. 9-11) Because the attorney's fees incurred by Plaintiffs stemmed from their efforts to defend against all the Defendants false claims to their property in the foreclosure action, (the District Court found this way as to Plaintiff Fridman), and this court must also find that those fees emanate from an injury to business or property. See *Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 263 (6th Cir. 2014) ("[T]he attorney's fees [the plaintiff] incurred were pecuniary losses intertwined with the property injury and therefore are recoverable under 1964(c).") (Dkt. No. 54) (Appellants Appendix. Pg. 9-11) Moreover, as found by the District Court, because the Defendants false statements in these documents were the reason why Plaintiffs were brought into the case, the Defendants conduct caused Plaintiffs injuries. Since these injuries occurred in at least 2018 the limitations period had not expired until at least 4/12/2022. See (Dkt. No. 54) (Appellants Appendix. Pg. 9-11).

Lastly, as explained in the brief the language of 1964(c) makes clear that a party must have been injured—that is, subject to injury or inevitably to be subject to a future injury—to have standing to bring a civil RICO claim. *Anitora Travel, Inc. v. Lapian*, 677 F. Supp. 209, 216

6

(S.D.N.Y. 1988) There is no question that the actual foreclosure on the Plaintiffs' land provides the instance of injury and is a new injury. *Barkley v. Carter County State Bank,* 920 F. Supp. 1441, 1443 (E.D. Mo. 1996). Plaintiffs are also clearly subject to future injury in that the foreclosure may occur and that they must continue to expend funds on defending the actions which thrust them into the litigation.

Lastly, Plaintiffs did not waive any claims in relation to their claims for injunctive relief. Plaintiff's argument in response to the motion to dismiss, that "unresolved factual determinations [made] it inappropriate for the Court to grant Defendants' motion to dismiss on statute of limitations grounds," was sufficient to preclude waiver of limitations arguments for consideration on appeal. *Sidney Hillman Health Ctr. of Rochester v. Abbott Laboratories, Inc.*, 782 F.3d 922 (7th Cir. 2015). [Docket 44 Pg 2.]

## B. 1964(C)'S CRIMINAL CONVICTION EXCEPTION

Defendants incorrectly assert the 1964(C) criminal conviction exception argument is waived or any other arguments in relation to the statute of limitations such as the injunctive relief claims. Plaintiff's argument in response to the motion to dismiss, that "unresolved factual determinations [made] it inappropriate for the Court to grant Defendants' motion to dismiss on statute of limitations grounds," was sufficient to preclude waiver of limitations arguments for consideration on appeal. *Sidney Hillman Health Ctr. of Rochester v. Abbott Laboratories, Inc.*, 782 F.3d 922 (7th Cir. 2015). [Docket 44 Pg 2.] Also, the issue should be decided since it is a question of pure statutory interpretation and the parties have fully briefed it on appeal. *Saxon v. Sw. Airlines Co.*, 993 F.3d 492, 496 (7th Cir. 2021), cert. granted, 142 S. Ct. 638 (2021) (The court should forgive waiver or forfeiture in a case that presents a pure question of statutory interpretation that the parties have fully briefed on appeal).

Defendants incorrectly assert that the exception applies only to the specific individual convicted in connection with the securities fraud and should not be extended to the AEB Defendant. Plaintiffs alleged a high-level corporate employee of AEB was convicted for a crime in relation to the fraud. (Compl. Pg. 11-17 Para. 53-80 Dkt. No. 1). "When high level corporate directors, officials or employees engage in a pattern of racketeering activity, the corporation itself is subject to liability under § 1962(a), for corruption which reaches the upper echelons of the corporation assumes the imprimatur of corporate policy." *R.E. Davis Chem. Corp. v. Nalco Chem. Co.*, 757 F. Supp. 1499, 1522 (N.D. Ill. 1990). Hence, once a high-level employee is convicted in relation to the fraud the Corporation itself becomes liable and the criminal conviction exception applies to the Corporation. The Dictionary Act clarifies that every federal statute's use of the term "person" includes "corporations, companies, associations, forms, partnerships, societies, and joint stock companies, as well as individuals" unless the context of the statute indicates otherwise. 1 U.S.C. § 1; see also *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 199 (1993). Nothing in the act suggests Congress intended to confine its usage of "person" to natural persons. Such a limited construction would effectively undermine the purpose of the statute because vicarious liability is consistent with congressional intent, provided the corporation derived some benefit from the RICO violation. *R.E. Davis Chem. Corp. v. Nalco Chem. Co*., 757 F. Supp. 1499, 1522 (N.D. Ill. 1990); *Dubai Islamic Bank v. Citibank, N.A*., 256 F. Supp. 2d 158 (S.D.N.Y. 2003); *Bd. of Managers of Trump Tower at City Ctr. Condo. by Neiditch v. Palazzolo*, 346 F. Supp. 3d 432 (S.D.N.Y. 2018) *Corman v. Nationwide Life Ins. Co*., 396 F. Supp. 3d 530 (E.D. Pa. 2019) CO) *Michalowski v. Rutherford*, 82 F. Supp. 3d 775 (N.D. Ill. 2015) *Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 880 F. Supp. 1202 (N.D. Ill. 1995*) Liquid Air Corp. v. Rogers*, 834 F.2d 1297, 1306

(7th Cir. 1987) Also, the Statute expressly requires that the person be convicted in connection with the fraud for the exception to apply, not that such person be the actual defendant. There is no limitation on vicarious liability within the statute. As such it would not be perverse to extend the limitations period against AEB in that it is alleged AEB benefited from this fraud and participated in the fraud, which is precisely what congress intended to punish.

Defendants assert Plaintiffs' claims are barred by 1964(c) because they may be actionable as fraud in the purchase or sale of securities. However, Plaintiff's claims do not entirely rely on conduct that would have been actionable as fraud in the purchase and sale of securities. Rather, each Defendant is accused of wire fraud, bank fraud, and other claims. If one was to remove any alleged conduct which is potentially actionable as fraud in the purchase or sale of securities, Plaintiff's claims for wire fraud, bank fraud, and other violations still allow the Plaintiffs to establish a violation of 1962.

### C. EQUITABLE TOLLING AND EQUITABLE ESTOPPEL

Defendants assert that the doctrine of equitable tolling exception does not apply. However, the Defendants confuse the test for the "wrong forum exception". The proper test for a "wrong" forum exception is to look whether the "the remedies available" for the earlier, timely filed claim "separate, distinct, and independent" from those of the belated claim?  If the answer to that question is yes, then the statute of limitations is not tolled. *Xanthopoulos v. United States Dep't of Labor*, 991 F.3d 823, 833 (7th Cir. 2021). The claim in this court has the same distinct objectives, procedures and statute of limitations and remedies. Xanthopoulos v. United States Dep't of Labor, 991 F.3d 823, 834 (7th Cir. 2021). Accordingly, the wrong forum exception does apply, or at least there are questions of fact which remain unresolved.

The Defendants then assert by failing to develop the equitable estoppel argument in any way, Plaintiffs have waived it. However, Plaintiffs cited to the active steps and statements made by the AEB Defendants citing to [Dkt. No. 44 Pg. 2-3]. These statements, when taken as true and construed in Plaintiff s favor, foreclose dismissal of Plaintiffs claims at this preliminary stage since the statements and conduct delayed the Plaintiffs from bringing the Federal Claims. *Porter v. Combs*, 105 F. Supp. 3d 872, 876–78 (N.D. Ill. 2015)("sort of 'lulling' comments" and conduct can be a basis for rejecting a motion to dismiss based on the statute of limitations" based upon equitable estoppel.) Therefore, Plaintiffs' equitable estoppel argument was also properly developed and presented. Also, the issue of whether the RICO was time barred by the statute of limitations should not have been resolved at motion to dismiss phase because of factual disputes, and disputes regarding whether doctrine of equitable tolling and equitable estoppel applied to this case and were asserted.

### D. THE SEPARATE ACCRUAL RULE.

Defendants incorrectly assert that the separate accrual rule does not apply. Plaintiff alleged that on or about 4/12/2018, 07/25/2018, and 01/08/2019 Defendants knowingly used, filed, and created documents containing false statements, and then submitted these documents using channels of interstate commerce. (Compl. 433-496, 736-787 Dkt. No. 1) As explained earlier, because the Defendants false statements in these documents are the reason why Plaintiffs were brought into the case, their conduct caused Plaintiff's injury. These injuries occurred in 2018. These actions resulted in new obligations to Plaintiff to pay new attorney's fees which were was not required or did not exist before such predicate acts. Moreover, the RICO ACT does not exclude "property rights" such as leaseholds and mortgages from the term "interests." "Interest" in fact encompasses all "property rights" in a business enterprise. The alleged transfer

of the mortgage and merger gave the new Defendants a right or claim to the premises owned by the enterprise which they have clearly asserted. They therefore acquired an interest in Plaintiffs in connection with the racketeering activity. *United States v. Jacobson*, 691 F.2d 110, 112–13 (2d Cir. 1982). Accordingly, Plaintiffs sustained actionable injury every time they lost money because of Defendants' RICO scheme and when the new Defendants obtained an interest in the mortgage. The Complaint alleges that Plaintiffs have made payments and incurred attorney's fees within four years of commencing this lawsuit. Hence, Plaintiffs' RICO claims for these payments and injuries are timely. *Ctr. Cadillac, Inc. v. Bank Leumi Tr. Co. of New York*, 808 F. Supp. 213, 226 (S.D.N.Y. 1992), aff'd, 99 F.3d 401 (2d Cir. 1995). Also, the language of 1964(c) makes clear that a party must have been injured—that is, subject to injury or inevitably to be subject to a future injury—to have standing to bring a civil RICO claim. As explained earlier, Plaintiff is subject to future injuries.

### E. DIMISSAL WITH PREJUDICE

Defendants assert dismissal with prejudice was proper because Plaintiffs neither sought leave to amend their complaint nor tendered a proposed amended complaint. However, Plaintiffs south leave to amend and stated "Plaintiff's request for leave to amend in the alternative and cited to *Joseph v. Bach & Wasserman, L.L.C.*, 487 Fed. Appx. 173, 178–79 (5th Cir. 2012)." [Docket 44 Pg. 35] Moreover, Plaintiffs could not have tendered a proposed amended complaint after the matter was dismissed with prejudice by the trial court. Plaintiffs could only appeal, file a motion to reconsider, or amend the pending counterclaim in Florida. The amended complaint would need to be tendered in the form of an amended counterclaim before the Florida Court. The claims can be added to the Plaintiff's pending counterclaims pursuant to Florida law because the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or

occurrence set forth or attempted to be set forth in the original pleading, the amendment shall relate back to the date of the original pleading. Fla. R. Civ. P. 1.190. The claim which was dismissed here arises out of the conduct/transaction in the counterclaim and could be brought in State Court as part of the amended complaint based on the District Courts 12(b)(1) finding, however, the dismissal with prejudice precludes this right, despite the relation back doctrine which would make the claim timely since the Counterclaims were filed in 2011. Hence, dismissal with prejudice is improper in that the Counterclaims were and are still pending in Florida and the counterclaim could be amended to include this claim.

### F.  NO INDEPENDENT BASIS TO AFFIRM

Defendants then assert various other arguments asking to affirm the judgement. However, Defendants failed to file a cross-appeal. *Alejo v. Heller*, 328 F.3d 930, 937 (7th Cir. 2003). The trial court found that Plaintiff Fridman "has adequately plead an injury to his business or property based on the attorney's fees he incurred because of Defendants' RICO violations." Moreover, the court did not ignore or overlook Defendants' Rule 12(b)(6) other arguments for dismissal, but rather expressly chose not to deal with them. The Defendants admitted the sufficiency of the complaints by making a factual challenge but now seek to reverse this court's finding on the 12(b)(1) motion by asking the court to find that Plaintiffs failed to properly plead a claim under 12(b)(6), thereby expanding their rights, and limiting the rights of Plaintiff, or changing the judgment. Without a cross appeal they cannot do so.

### i.    PROFESSIONAL LEGAL SERVICES

Defendants allege that Plaintiffs fail to state a claim under 1962(c) because providing professional legal services is not a basis for RICO liability. However, Plaintiffs' allegations are identical to those in *Slorp* where the court found a claim was properly stated. Moreover, there

exists no "broad shield from RICO for attorney advocacy." A person may violate 1962(c) if he conducts the affairs of an enterprise, even though he does so through the provision of professional services. *Crowe v. Smith*, 848 F.Supp. 1258, 1264 (W.D.La.1994); L*iving Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353, 364 (9th Cir.2005) *Handeen v. LeMaire*, 112 F.3d 1339, 1349 (8th Cir.1997). *The Cadle Co. v. Flanagan*, CIV. 301CV531AVC, 2006 WL 860063, at *9 (D. Conn. Mar. 31, 2006); *Thomas v. Ross & Hardies*, 9 F. Supp. 2d 547, 554–55 (D. Md. 1998). *Napoli v. United States*, 32 F.3d 31 (2d Cir.1994) cert. denied, 513 U.S. 1110, 115 S.Ct. 900, 130 L.Ed.2d 784 (1995); *Tribune Co. v. Purcigliotti*, 869 F.Supp. 1076, 1098 (S.D.N.Y.1994) *Tribune Co. v. Abiola*, 66 F.3d 12 (2d Cir.1995); Accordingly, the operation-or-management requirement under 1962(c) can be met through the mere provision of professional services to the alleged racketeering enterprise.

Here, Defendants knowingly created, drafted, and filed documents containing verified false statements. [Docket 1 Pg. 45-72 Para. 267-432]. It is alleged Defendants directed persons to sign these documents knowing them to have been false. Moreover, it was alleged that sometime in sometime in 2016 or 2017 AEB, through its attorneys, hired a handwriting expert who determined Bella Roiburt did not sign Mortgage 2. [Docket 1 para. 207, 333, 356, 441,] At the time of creating and signing the documents The Defendants were aware Goldstein admitted to the frauds in the loans, the forgery of the mortgage, and stated he never spoke with the parties, never met Plaintiff Fridman or Plaintiff Bella Roiburt at the closing, and hence they never approved the recording of the mortgages or initialed them. [Docket 1 para. 198-204] Knowing these facts, the Defendants still used, created, filed, signed, and directed their clients to sign false verified complaints knowing them not to be true. Here, Defendants used the illegal work product they themselves created, knowingly incorporated forged documents in the illegal work product

they themselves created, and did not simply give it to their client, but rather gave it to the court, Plaintiffs, and other third parties. Plaintiff allegations sufficiently support the claim that the Defendants went beyond the offering of traditional legal advice and volunteered to take part in the enterprise or otherwise created the enterprise.

The allegations show Defendants participated in the operation or management of the affairs of the enterprise. The complaint alleges that Defendants, with knowledge of a conspiracy to violate the RICO statute, agreed to conduct or participate in the affairs of an enterprise through a pattern of racketeering and agreed to the commission of two predicate acts of racketeering as required in Muskegon. The Complaint alleges that the Defendants orchestrated the creation and series of false documents to effectuate the goal of obtaining money and property from Plaintiffs for themselves and for all the Defendants. [Docket 1 Paragraphs 267-432]. The Defendants are also accused of directing others to execute false or misleading documents and assisted others in preparing false and misleading documents to extract monies and property from Plaintiffs for themselves and for all the Defendants. [Docket 1 Paragraphs 267-432]. The Defendants also appeared and defended the original transaction and devised a legal strategy to attempt to persuade the court to validate the transactions. [Docket 1 paragraphs 198-204, 207, 267-432, 333, 356, 441,] Plaintiffs' allegations in this case are part-and-parcel with other cases where attorneys representing the parties were plausibly accused of RICO violations.

In *Handeen v. Lemaire*, 112 F.3d 1339, 1350 (8th Cir. 1997), the Firm directed its client and its clients' employees to create false documents and declarations to obtain money and property from the Plaintiffs, represented the client's, defended their fraudulent claims against objections, prepared the clients filings containing erroneous information, formulated, and promoted fraudulent filings, and participated in devising a scheme. The *Handeen* facts are almost

identical to allegations by Plaintiff. This intentional criminal conduct goes outside the scope of providing mere traditional legal services. *State Farm Mut. Auto. Ins. Co. v. Rosenfield*, 683 F. Supp. 106, 109 (E.D. Pa. 1988). *Wiatt v. Winston & Strawn LLP*, 838 F. Supp. 2d 296, 320 (D.N.J. 2012). If substantiated, Plaintiffs' allegations "would not be a case where a lawyer merely extended advice on possible ways to manage an enterprise's affairs." *Kruse v. Repp*, 419CV00106SMRSBJ, 2020 WL 1317479, at *23–24 (S.D. Iowa Mar. 20, 2020).

Furthermore, the allegations are sufficient to find that The Defendants participated in the conduct of a RICO enterprise because they had a role in the conception, creation, or execution of the scheme since they created the documents rather than relying on the documents "presented to them as a fait accompli" unlike the Attorney in *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 521 2d Cir. 1994. Nor is this a situation where counsel issued an opinion based on facts provided by a client. It is also alleged that The Defendants based its legal advice on false information provided by the Defendants, unlike the Attorney in *Nolte v. Pearson*, 994 F.2d 1311, 1316–17 (8th Cir. 1993). Moreover, like in *Bocciolone v. Solowsky*, 08-20200-CIV, 2009 WL 936667, at *4 (S.D. Fla. Apr. 6, 2009) the attorneys knowingly made false statements and created false documents. Lastly this matter is also identical to the matter of *The Cadle Co. v. Flanagan*, No. 301CV531AVC, 2006 WL 860063, at *9–11

The Defendants here were called to answer for their own conduct—conduct that included wrongfully and knowingly filing false documents with the court to obtain monies and property from the Plaintiff's by defrauding Plaintiff's, others, and the Court. This conduct far exceeded the rendering of legal advice and constituted participation in fraudulent conduct in violation of RICO. In sum, this is not a case where someone extended advice on possible ways to manage an enterprise's affairs. Nor would this be a situation where counsel issued an opinion based on facts

provided by a client. Instead, the Firm truly did associate with the enterprise to the degree encompassed by the Complaint and the attorneys "participated in the core activities that constituted the affairs of the enterprise namely, the manipulation of the legal. The Firm and lawyers played some "role in the conception, creation, or execution," of the illegal scheme, and the court could safely say that the lawyers participated in the operation or management of the enterprise by assuming at least "some part in directing the enterprise's affairs." Reves, 507 U.S. at 179, 113 S.Ct. at 1170. The Defendants' conduct as alleged in the Complaint goes well past the kind of routine litigation activities that these courts have found inadequate to state a claim under RICO. Defendants are accused of committing rampant fraud over the course of several years and in numerous venues throughout the country, against more parties then just these Plaintiffs. *Garlock Sealing Techs., LLC v. Simon Greenstone Panatier Bartlett*, 2015 WL 5148732, at *5 (W.D.N.C. Sept. 2, 2015).

Lastly, aider and abettor liability applies in this matter. For such liability to apply Plaintiff must allege three elements: first, the existence of an independent wrong committed by the primary offender; second, the rendering of substantial assistance to the primary wrongdoer by the aider and abettor; and third, the requisite scienter on the aider and abettor's part. A review of the complaint reveals it identifies a series of independent wrongs committed by Defendants [Docket 1 Paragraphs 54-805] That all such persons were rendered substantial assistance by the attorney and law firm Defendants through their fraudulent conduct while acting with the requisite intent, in accomplishing this wrong and with knowledge of this wrong. *R.E. Davis Chem. Corp. v. Nalco Chem. Co.*, 757 F. Supp. 1499, 1514–16 (N.D. Ill. 1990).

16

ii.    18 U.S.C. 1962(A)

Defendants assert Plaintiffs cannot allege facts establishing that Defendants' use or investment of racketeering income proximately caused their claimed injuries. However, Plaintiff alleged "As direct and proximate result of Forsyth, AEB, AE LLC, and AE INC racketeering activities and violations of 18 U.S.C. § 1962(a) Plaintiffs have been injured in their business and property in that Plaintiff's sustained injuries in the form of attorney's fees that were proximately caused by the defendants conduct, clouding of title/impairment of title, inability to use or transfer property, the alleged assignment of the notes and mortgages to AEB-MERGER LLC, further impairing title, and the continued use of the funds for the fraudulent legal proceedings in Florida.

Moreover, the use or investment injury requirement was satisfied by allegations that the defendants used racketeering income to build a "litigation war chest" that funded the fraudulent legal proceedings against the plaintiff. *Crowe v. Smith*, 848 F.Supp. 1258, 1265 (W.D.La.1994). [Docket 1 Pg 123, Paragraph 813]

Plaintiff also alleged more than the mere reinvestment of racketeering income into the same racketeering enterprise that generated the income. *Kaczmarek v. Int'l Bus. Machines Corp.*, 30 F. Supp. 2d 626, 628 (S.D.N.Y. 1998). Plaintiff alleged the reinvestment of racketeering income into AEB-MERGER, and other entities.

iii.    18 U.S.C. 1962(B)

Defendants assert "Plaintiffs did not and could not allege that the AEB Defendants acquired any interest or control over the alleged enterprise consisting of Bishop or the individual Plaintiffs. However, 1962(b) does not exclude "property rights" such as leaseholds and mortgages from the term "interests." "Interest" in fact encompasses all "property rights" in a business enterprise. The alleged fraudulent execution and assignment of the mortgages gave new

17

Defendants a new right or claim to the premises owned by the enterprise which they have clearly asserted. They therefore acquired an interest in Plaintiff in connection with the racketeering activity. See *United States v. Jacobson*, 691 F.2d 110, 112–13 (2d Cir. 1982). Accordingly, Plaintiffs have stated a proper claim under 1962(B).

iv.      18 U.S.C. 1962(C)

Defendant alleges that Plaintiff's failed to state a proper claim for relief under 18 U.S.C. § 1962(C). However, as explained earlier the Plaintiff's allegations are identical to those in <u>Slorp</u> where the court found the 1962(C) claim was properly stated. *Slorp* 587 Fed. Appx. 249, 264–66 Moreover, to establish a pattern of racketeering activity, the plaintiff must allege at least two related acts of racketeering activity that amount to or pose a threat of continued criminal activity. The RICO statute enumerates dozens of crimes that constitute racketeering activity. 18 U.S.C. § 1961(1). Among these crimes are mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343—two of the many predicate crimes that Plaintiffs alleged in their complaint. Mail and wire fraud consist of (1) a scheme or artifice to defraud; (2) use of the mails or interstate wire communications in furtherance of the scheme; and (3) intent to deprive a victim of money or property. A scheme to defraud is any plan or course of action by which someone intends to deprive another of money orproperty by means of false or fraudulent pretenses, representations, or promises.

Plaintiffs allege sufficient plausible facts to indicate that Defendants made a material misrepresentation of fact to Plaintiff that was calculated or intended to deceive Plaintiff. Plaintiffs' complaint alleges that Defendants filed a state-court complaint against Plaintiff's misrepresenting the signatures of mortgages, guarantees, and other things. Plaintiffs further alleged that Defendants made misrepresentations in the loan documents, created fraudulent

documents, and served them on Plaintiffs in connection with the foreclosure action and the loan. According to Plaintiffs, these material misrepresentations were intended to deceive Plaintiffs, third parties, and the state court. Plaintiff has therefore alleged precisely what is required of him. *Slorp* 587 Fed. Appx. 249, 264–66

Plaintiff has adequately alleged the existence of an enterprise that satisfies the basic criteria. Plaintiff alleged that the defendants conspired to draft and execute false documents and to use the documents in foreclosure proceedings to seize Plaintiff's property. Plaintiff further alleged that the defendants used the mails and wires several times in furtherance of this scheme and alleged that the same defendants have engaged in similar malfeasance, all with the aim of obtaining monies, property, and title to several properties that are not rightfully theirs. The alleged association-in-fact enterprise thus had a purpose and sufficient longevity, and its members had lasting relationships with one another. The defendants may introduce evidence to rebut any of these allegations, including the existence of an enterprise that was separate and distinct from the racketeering activity, but the allegations in Plaintiff complaint are sufficient to survive a motion to dismiss. *Slorp* 587 Fed. Appx. 249, 264–66; *Feld Entm't Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals*, 873 F. Supp. 2d 288 (D.D.C. 2012).

Defendant then alleges a scheme involving a single transaction cannot meet the RICO requirements for showing a pattern of racketeering activity. This is also incorrect. Court's may find a pattern where there is only a single victim and a singlescheme where there are repeated economic injuries. *LaSalle Bank Lake View v. Seguban*, 937 F. Supp. 1309, 1321 (N.D. Ill. 1996). Because Defendants have engaged in the fraudulent conduct multiple times over a twelve-year period towards the Plaintiff's, their conduct constitutes a "pattern" pursuant to RICO. See Id. Moreover, because Defendants made more than 4 bad loans to more than four

persons and businesses, each with distinct ownership and engaged in different businesses, there is a "pattern of racketeering activity," the kind of planned, repeated wrongdoing RICO was intended to deter. *A.I. Credit Corp. v. Hartford Computer Group, Inc.,* 847 F. Supp. 588, 604 (N.D. Ill. 1994). Accordingly, where, as here, multiple predicate acts relating to a single scheme inflict repeated economic injury on an alleged victim over the course of several years, both relatedness and continuity are clearly present. See *Fujisawa Pharm. Co., Ltd. v. Kapoor*, 814 F. Supp. 720, 733–34 (N.D. Ill. 1993).

The Defendants also asserts, the predicate acts are unrelated. However, the allegations show that that Defendants devised a series of schemes to defraud Plaintiffs, others, and other financial institutions. There are more then 40 loans processed by the Defendants which were fraudulent. Defendants' scheme had no logical point of termination and would have continued if not discovered. The predicate acts which form the basis of Plaintiff's RICO claim are a regular way of conducting business for Defendant. Based upon these allegations, Plaintiff has, at least for the purposes of Defendants' Motions to Dismiss, sufficiently plead an open-ended continuity. The scheme in the present case had no natural ending point. Defendants were capable of repeating their alleged schemes indefinitely into the future. Indeed, but for the financial FDIC interfering, Defendants may well have continued to repeat their alleged schemes when dealing with other people. In addition, as in *United States v. Busacca,* 936F.2d 232 (6th Cir.1991), Defendants' continued control of and participation in the business threatened a continuation of the sort of criminal acts alleged in the Complaint. Finally, procuring financing for persons is a regular way of conducting business for Defendants. Allegations of bank fraud to make these loans would make the predicate offenses a regular way of conducting business. *Vicom,* 20 F.3d at 783–84; *Fleet Credit Corp. v. Sion,* 893 F.2d

441, 447–48 (1ˢᵗ Cir.1990); *Johnston v. Wilbourn,* 760 F.Supp. 578, 588 n. 13 (S.D.Miss.1991). Accordingly, Plaintiff has alleged facts necessary to establish a specific threat of repetition and that the predicates are a regular way of conducting Defendants' business.

The Court must find that Plaintiff has sufficiently established open-ended continuity, and therefore, pattern. *Resolution Tr. Corp. v. S & K Chevrolet*, 868 F. Supp. 1047, 1061 (C.D. Ill. 1994). To establish open-ended continuity, for purposes of determining whether a pattern exists under RICO, the threat of repetition must be viewed at the time the racketeering activity occurred; subsequent events are irrelevant. *Inteliquent, Inc. v. Free Conferencing Corp.*, 16-CV- 06976, 2020 WL 7027583 (N.D. Ill. Nov. 30, 2020). The facts in this case applied to the factors enumerated in Morgan suggest the existence of a pattern. An examination of the predicate acts themselves shows that there has been an open period of repeated conduct. Relatedness is evidenced by the similarity of acts in each loan, consistency of purpose, and relationship of the parties. Continuity can be found in the multitude of acts, the number of victims and the distinct injuries occurring over the long period of time. An examination of the scheme as a whole shows that defendants were engaged in more than a one time activity. They were in the business of stealing money and resources from many people. In fact, it may be said that making such bad loans with the intent to defraud was Defendants regular way of conducting AEB's business. Both approaches justify the conclusion that a pattern of racketeering existed. *Dynabest Inc. v. Yao, 760 F. Supp. 704, 709–11 (N.D. Ill. 1991)*

Also, "To determine whether the goals of relationship and continuity for pattern are met, as elements of the RICO act, a court must ask, among other things: (1) whether at least two acts in a series are related to one another, such as by being part of a single scheme; and (2)

if not, whether they are related to an external organizing principle, for example, to the affairs of the enterprise. If the predicate acts forming the basis of an alleged substantive violation of the RICO act are related neither to each other nor to an external organizing principle, no relationship is present, and the court need not proceed further in determining whether a pattern exists. *Inteliquent, Inc. v. Free Conferencing Corp.*, 16-CV-06976, 2020 WL 7027583 (N.D. Ill. Nov. 30, 2020). To form a pattern, the predicate acts must exhibit "continuity" Related predicate acts have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristicsand are not isolated events." *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 827–28 (7th Cir. 2016). Here the predicate acts have the same or similar purpose, to defraud. The results are the same. The methods were the same on each loan in terms of inflating the appraisals, forged tax returns, and false documents. The Participates in each of the acts were upper-level management, Presidents, and vice-presidents. The loans were all commercial. The same board of directors participated in and approved the loans. The many victims are different or otherwise have interrelatedby distinguishing characteristics in that they are borrowers from the bank and commercial customers and are not isolated events. Moreover,they are also related to an external organizing principle, for example, to the affairs of the enterprise. Accordingly, the predicate acts are related to each other.

After determining that relationship is present between predicate acts, a court weighing whether a "pattern" exists under the RICO act and must additionally ask: (1) whether the acts in the series are open-ended, that is, whether they lack an obvious termination point; and (2) if not, whether the acts in the closed-ended serieswent on for a substantial period of time, that is, more than a few weeks or months. *Inteliquent, Inc. v.*

*Free Conferencing Corp.*, 16-CV-06976, 2020 WL 7027583 (N.D. Ill. Nov. 30, 2020). Generally, if the predicate acts in a series either lack an obvious termination point or went on for a substantial period of time, continuity is present, as necessary to establish a pattern under the RICO Act; if not, a court may ask up to two additional questions to determine continuity, namely, (1) whether a threat of continuity may be inferred from the character of the illegal enterprise, and (2) if not, whether a threat of continuity may be inferred because the acts represent the regular way of doing business of a lawful enterprise. See Id. Here the predicate acts in a series either lack an obvious termination point and otherwise went on for a substantial period of more than 11 years. Also, the Defendants have sought to defraud the plaintiffs not once, but more than twice in that each act caused complained of caused a distinct and separate injury. *Jones v. Lampe*, 845 F.2d 755, 758 (7th Cir. 1988). Also, there were allegations that the Defendants engaged in this fraudulent activity in the past and that it threatened to do so in the future. At best, the Defendants are not an "isolated offender," who engaged in a "one-shot" effort to inflict a single injury." See *Id.*

Lastly, in *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975–76 (7th Cir.1986), the Seventh Circuit indicated that the existence of multiple victims and distinct injuries would tend to support a finding that a pattern existed. Although the Plaintiffs allege that they were only defrauded in loan transactions, they also allege that Defendants defrauded other loan applicants in the same kind of transactions. The complaint, like the complaint in Morgan, satisfies both the continuity and relationship aspects of the pattern requirement. *Ferleger v. First Am. Mortg. Co.*, 662 F. Supp. 584, 588 (N.D. Ill. 1987), *Papai v. Cremosnik, 635 F.Supp. 1402 (N.D.Ill.1986)*. Moreover, in the instant case, plaintiffs have alleged that defendants committed several acts of mail fraud, wire fraud, and bank fraud over a period of

several years in furtherance of an overall scheme to defraud plaintiffs. These acts were distinct; some related to the foreclosure actions that occurred two years apart, while others related to allegedly fraudulent statements made in connection with the initial loan transaction. While these acts can be viewed as part of a single grand scheme, they were ongoing over a period more than four years in addition to being distinct acts. Under the facts of this case, plaintiffs have satisfied both the continuity and relationship aspects of the pattern requirement. *Morgan v. Bank of Waukegan*, 804 F.2d 970, 976 (7th Cir. 1986)

Also, the fact that Defendant's cannot recover for injuries to third parties does not mean that they may not assert them as parts of the pattern of racketeering that resulted in their injury. In seeking to define the pattern of racketeering, a plaintiff may include whatever acts areparts of the same pattern, even though the plaintiff may only have been injured by one of those acts. *Environmental Tectonics v. W.S. Kirkpatrick, Inc*., 847 F.2d 1052, 1066; *Town of Kearny v. Hudson Meadows Urban Renewal Corp*., 829 F.2d 1263, 1268, *Cohen v. Wolgin, CIV*. 87-2007, 1995 WL 33095, at *11 (E.D. Pa. Jan. 24, 1995). *Home Ins. Co. v. Greenfield & Chimicles*, 97-7797, 1999 WL 286440, at *5 (E.D. Pa. May 5, 1999).

Defendant also asserts that Plaintiffs cannot show a pattern of racketeering activity with continuity and, therefore, the 1962(c) claims should be dismissed in their entirety. However, as explained earlier, the acts in the series are open-ended, that is, the acts have no obvious termination point and acts in the closed-ended series go on for a substantial period, that is, more than a few weeks or months. Defendants' long period of predict acts, ongoing prosecution of the lawsuit and the predicate acts in prosecuting the action has occurred for a more then 11 years. Accordingly, the allegations meet the continuity requirement, both closed and open.

As explained, earlier Plaintiff has adequately alleged the existence of an enterprise that satisfies these basic criteria. The defendants may introduce evidence to rebut any of these allegations, including the existence of an enterprise that was separate and distinct from the racketeering activity, but the allegation in Plaintiff complaint are sufficient to survive a motion to dismiss. *Slorp v. Lerner, Sampson & Rothfuss*, 587 Fed. Appx. 249, 264–66 (6th Cir. 2014)

### D. PLAINTIFFS DID NOT FAIL TO STATE A CLAIM UNDER 18 U.S.C. § 1962(D)

Defendants then asserts, since Plaintiffs' substantive RICO claims fail for the reasons set forth above, their 1962(d) claim also must be dismissed. As explained earlier, the Plaintiffs' RICO claims do not fail. A complaint must allege some factual basis for a finding of a conscious agreement among the defendants. *Hecht v. Commerce Clearing House*, Inc., 897 F.2d 21, 26 n. 4 (2d Cir.1990); The requirements for pleading a RICO conspiracy are measured by the liberal pleading requirements of Fed.R.Civ.P. 8(a). See Id. Furthermore, in their complaint plaintiffs have properly pled that Defendants conducted or participated in the conduct of the "enterprise's" affairs and conspired to do so through a pattern of racketeering activity. [Docket 1 paragraph 851]. The complaint names the individuals and specific predicate acts allegedly performed by those individuals in furtherance of the scheme to obtain financial gain. Such allegations sufficiently portray an alleged conspiracy to commit criminal acts and establish the "enterprise" element of RICO. See Id. *Dudley Enterprises, Inc. v. Palmer Corp.*, 832 F. Supp. 221, 225 (N.D. Ill. 1993) As discussed above and below, Plaintiffs have pled that the defendants have conspired to commit acts of fraud for financial gain. That is all that is required at this time to state a claim of a RICO conspiracy.

Furthermore, a defendant's consent to join a RICO conspiracy may be "manifested by an assent to commit predicate acts of racketeering," or "inferred from circumstantial evidence. *Fuji Photo Film U.S.A., Inc. v. McNulty*, 640 F. Supp. 2d 300, 312 (S.D.N.Y. 2009). *United States v. Koenig*, 856 F.2d 843, 854 (7th Cir.1988); *United States v. Nesbitt*, 852 F.2d 1502, 1510 (7th Cir.1988). A plaintiff also need not allege precisely when a defendant entered into the agreement. *Martinez v. Calimlim*, 651 F. Supp. 2d 852, 860 (E.D. Wis. 2009) The Plaintiffs' complaint is full of allegations relating to the conduct and knowledge and corporate defendants. Further, it is immaterial that there may not be a specific agreement by a defendant to commit two predicate acts. [T]he touchstone of liability under § 1962(d) is an agreement to participate in an endeavor which, if completed, would constitute a violation of the substantive statute." *Shapo v. O'Shaughnessy*, 246 F. Supp. 2d 935, 966–67 (N.D. Ill. 2002) Plaintiff's complaint alleges that each defendant entered into an agreement to violate RICO. [Docket 1 Paragraph 851- 859]

Moreover, the complaint also alleges an agreement by the Garcia Defendants to the commission of two specific predicate acts. [Docket 1 Paragraph 851] The complaint alleges that over the course of multiple years the Defendants prepared numerous false documents submitted by wire and mail for the Enterprise. Such allegations are evidence of an agreement by the Defendants to participate in the affairs of the RICO enterprise. *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 732–33 (7th Cir. 1998) holding modified by *Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961 (7th Cir. 2000) Furthermore, Defendants demonstrated their discretionary authority and direction of the enterprise by creating false documents for the enterprise, filing these false documents for the enterprise, appearing in the proceedings, and representing the Defendants in proceedings. Plaintiffs have presented

26

a genuine question as to Defendant's knowledge of the racketeering enterprise and his willingness to promote it. *Baisch v. Gallina*, 346 F.3d 366, 376–77 (2d Cir. 2003). In sum, the Plaintiff's complaint alleges facts from which a jury might infer that Defendants "by words or actions, manifested an agreement" with one another, to conspire in the furtherance of the common purpose of a RICO enterprise. This is sufficient to survive a motion to dismiss. *Water Int'l Network, U.S.A., Inc. v. East*, 892 F. Supp. 1477, 1482 (M.D. Fla. 1995).

Also, as explained earlier the doctrine of aider and abettor liability satisfy the two-act requirement in this case. Here the Attorney's knowingly created Fraudulent documents for the client not based on facts provided by the client. Plaintiffs have alleged an understanding that the attorneys would create the false documents sufficient for court and the Defendants would then knowing they were false would verify them. Plaintiffs conduct which reasonably suggests a meeting of the minds—between the attorneys on the one hand and the defendants on the other—to obtain monies and property from the Plaintiffs through a shared intent to advance the underlying racketeering. At this preliminary stage, where the allegations of the complaints are assumed to be true, plaintiffs have pleaded an agreement to join the defendants' RICO conspiracy.

## G. CONCLUSION

Wherefore, the Plaintiffs request this court to reverse the Judgment and Order entered on 9/28/2021 dismissing the Plaintiff's cause of action with prejudice and to remand the matter with instructions requiring the Defendants to answer the Plaintiffs' complaint or otherwise allowing Plaintiffs to amend the complaint as necessary.

/S/ ILIA USHAROVICH

Ilia Usharovich, Attorney for Plaintiffs
224 South Milwaukee Avenue Suite G
Wheeling, Illinois 60090
Phone: 847-264-0435
Facsimile: 224-223-8079
Email: Ilia@Usharolaw.com

## H.  CERTIFICATE OF COMPLAINCE

In accordance with Fed. R. App. P. 32(a)(7)(c), I certify that

1.  This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B)(ii) and

    Circuit Rule 32 because, excluding the parts of the document exempted by Fed. R. App.

    P. 32(f) this document contains 6971 words

2.  That this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5)

    And the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has

    been prepared in a proportionally spaced typeface using Microsoft Word in 12 Point

    Times New Roman.

/S/ ILIA USHAROVICH

Ilia Usharovich, Attorney for Plaintiffs
224 South Milwaukee Avenue Suite G
Wheeling, Illinois 60090
Phone: 847-264-0435
Facsimile: 224-223-8079
Email: Ilia@Usharolaw.com
Date: 1/24/2022

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

|  | | No.  21-2773 |
|---|---|---|
| Irina Maron, et al | ] | |
| Plaintiff-Appellant, | ] | Appeal from the United States District |
| | ] | Court for the Northern District of Illinois |
| v. | ] | |
| | ] | District Court Case Number and Judge: |
| Ray Garcia, et al | ] | 20-CV-07282 |
| Defendant-Appellee | ] | |
| | ] | Honorable Judge Andrea R. Wood |
| | ] | |

CERTIFICATE OF SERVICE

I hereby certify that on 1/24/2022 I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF usersand that service will be accomplished by the CM/ECF system.

/S/ ILIA USHAROVICH

By:/S/Ilia Usharovich
Ilia Usharovich, Attorney
224 South Milwaukee Avenue Suite G
Wheeling, Illinois 60090
Telephone:847-264-0435
Email: ilia@usharolaw.com
Attorney For Plaintiff-Appellant

1